IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES CAIN, *et al*.                                                                      PLAINTIFFS

v.                                            4:08CV00433-WRW

BRAD ABBOTT, *et al*.                                                                     DEFENDANTS

## ORDER

Pending is a Motion for Summary Judgment filed by separate Defendants Nannen, Shuetzle, and Willis (Doc. No. 26). Plaintiffs have responded,[1] and Defendants have replied.[2] For the reasons set out below, Defendants' Motion is GRANTED.

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[5] Nevertheless, summary judgment promotes judicial economy by

---

[1]Doc. Nos. 32, 33, and 37.

[2]Doc. No. 38.

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

preventing trial when no genuine issue of fact remains.[6]  I must view the facts in the light most favorable to the party opposing the motion.[7]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

## II. BACKGROUND

Plaintiff James Cain is a 33-year old African-American male, and Plaintiff Stackhouse is a 29-year old African-American male.[10]  Both Plaintiffs reside in Pulaski County, Arkansas.[11] Plaintiffs worked for KIPR Power 92, a radio station, when the events that led to this lawsuit occurred. At all relevant times, Defendants John Nannen, Mickey Shuetzle, and Tim Willis ("Defendants") were all undercover narcotics officers with the Narcotics Unit of the North Little

---

[6]*Id.* at 728.

[7]*Id.* at 727-28.

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

[10]Doc. No. 1.

[11]*Id.*

Rock Police Department ("NLRPD").[12] All Defendants are sued in both their individual and official capacities.[13]

NLRPD Investigator Ronnie Miller received information from a confidential informant ("CI") that cocaine was being sold at the Bird's Nest Restaurant ("Bird's Nest"), located at 2801 West 7th Street, Little Rock, Arkansas.[14] On May 27, 2005, Investigator Miller provided an affidavit for a search and seizure warrant of the restaurant based on two controlled buys made at the Bird's Nest by Investigator Miller's CI.[15] Investigator Miller's affidavit lists the following facts, among others, as constituting reasonable cause: a CI gave information that cocaine was being sold from the Bird's Nest; there were multiple controlled buys at the Bird's Nest from a male known to the CI as "Fat Mike"; it is the practice of illegal narcotics dealers to keep quantities of controlled substances, records, proceeds, and other items related to the illegal narcotics trade at their restaurant; and that the suspect had been convicted of possession of a firearm, carrying a prohibited weapon, and third-degree battery.[16]

Finding that reasonable caused existed to believe cocaine was being concealed on the premises, North Little Rock District Court Judge Jim Hamilton issued a no-knock search and seizure warrant for the Bird's Nest and its curtilage. Judge Hamilton determined that announcing police presence would be dangerous or futile, or that it would "inhibit the effective investigation of the crime by allowing danger to the life of officers . . . ."[17]

---

[12]Doc. No. 33.

[13]Doc. No. 1.

[14]Doc. No. 33.

[15]*Id.*

[16]Doc. No. 28, Exhibit E.

[17]Doc. No. 28, Exhibit D.

On June 9, 2005, the NLRPD Narcotics Unit, along with the Little Rock Police Department Special Weapons and Tactics ("LRPD SWAT") Team, arrived at the Bird's Nest to execute the search and seizure warrant.[18] The LRPD SWAT Team was to assist the NLRPD Narcotics Unit in safely executing the warrant by securing the scene, entering the Bird's Nest, and quickly detaining any occupants of the building and curtilage.[19] Members of the LRPD SWAT Team wore helmets, masks, goggles, protective vests, and elbow and knee pads, and were issued assault rifles.[20]

Defendants assert that, based on orders from Chief Danny Bradley, members of the NLRPD Narcotics Unit do not wear masks and are not issued assault rifles or the same gear as the LRPD SWAT Team.[21] Plaintiffs dispute that assertion. Plaintiffs point out that, in Defendant Willis's deposition testimony, he conceded that Chief Danny Bradley had not issued a written general order directing members of the NLRPD Narcotics Unit not to wear masks. Plaintiffs also emphasize that, during the course of his career, Defendant Willis had executed a search warrant while wearing a face mask.[22]

---

[18]Doc. No. 33.

[19]*Id.*

[20]*Id.*

[21]Doc. No. 28.

[22]Doc. No. 33, Exhibit A - Deposition of Defendant Willis, at 25-26.

Also on June 9, 2005, Plaintiffs were conducting a radio promotion for their employer, Power 92.[23] As part of the promotion, Plaintiffs would pull radio station listeners over to give them free gas cards.[24] Plaintiffs found a listener to pull over, followed her from I-630 to the Woodrow exit, and followed her as she parked partially on the Bird's Nest parking lot and partially on the street.[25] Plaintiff's car was stopped on the street adjacent to the Bird's Nest.[26] After stopping, Plaintiffs contacted the contest winner, obtained her information, and instructed her about speaking on the radio.[27]

During the course of speaking with the listener, the LRPD SWAT Team began to execute the search warrant by securing the area.[28] Police officers exiting a SWAT van, wearing masks and vests, and equipped with assault rifles ordered Plaintiffs out of their vehicle, placed them on the ground, and handcuffed them with plastic flex-cuffs handcuffs.[29] Plaintiff Stackhouse had been speaking to someone on his cell phone when the officers ordered him out of the vehicle.[30] The masked police officers then moved Plaintiffs to the front porch of the Bird's Nest.[31] Plaintiffs do not recognize any of the Defendants.[32]

---

[23]Doc. No. 33.

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]Doc. No. 33.

[30]*Id.*

[31]*Id.*

[32]*Id.*

### A. Officer Nannen

Defendants assert that Officer Nannen did not participate in the seizure of Plaintiffs.[33] Plaintiffs contest this fact. Plaintiffs apparently do not assert the Officer Nannen, himself, seized Plaintiffs, but that "Officer Nannen was part of the North Little Rock Narcotics Team, which subjected the Plaintiffs to a seizure."[34] Officer Nannen's role at the scene consisted of waiting in front of the business until the LRPD SWAT Team secured it and then searching the business.[35] Defendants maintain that Officer Nannen did not have any contact with Plaintiffs. Plaintiffs assert that "[a]s a member of the NLRPD narcotics team" Officer Nannen did have contact with them.[36]

### B. Officer Shuetzle

Defendants assert that Officer Shuetzle did not participate in the seizure of Plaintiffs.[37] Plaintiffs contest this fact. Again, Plaintiffs apparently do not assert Officer Shuetzle, himself, seized Plaintiffs, but that "Officer Shuetzle was a member of the North Little Rock Narcotics Team, which led to the seizure of the Plaintiffs."[38] Officer Shuetzle's role at the scene consisted of searching the business after the LRPD SWAT Team secured it.[39] Defendants maintain that

---

[33] Doc. No. 28.

[34] Doc. No. 33.

[35] *Id.*

[36] *Id.*

[37] Doc. No. 28.

[38] Doc. No. 33.

[39] *Id.*

Officer Shuetzle did not have any contact with Plaintiffs.[40] Plaintiffs contest that fact by pointing out that Officer Shuetzle testified that he does not recall having any contact with Plaintiffs.[41]

    C.    **Sergeant Willis**

Sergeant Willis rode near the rear of a police convoy, at least five vehicles back, as he approached the Bird's Nest restaurant.[42] Sergeant Willis was far enough back in the convoy that he could not see Plaintiff's vehicle or any officers approaching the vehicle. Before arriving on the property, Sergeant Willis was told that there was a vehicle on the street adjacent to the Bird's Nest. Sergeant Willis did not see any officers approach Plaintiffs' vehicle.[43] Once at the scene, Sergeant Willis passed by Plaintiffs, who had already been detained, and Sergeant Willis instructed an officer to get their information. He then went into the Bird's Nest, participated in a brief walk-through with the LRPD SWAT Team commander, and left the restaurant. After Sergeant Willis left the Bird's Nest, he was briefed about Plaintiffs and made his first contact with them.[44] These facts are undisputed, but Plaintiffs still maintain that Sergeant Willis participated in the initial seizure of Plaintiffs.[45]

Plaintiffs allege that they were detained, in handcuffs, for about 45 minutes.[46] Plaintiffs assert that they told the officers that they worked for Power 92; that they were doing a promotion for the station; and that they did not have anything to do with what was going on. Plaintiffs

---

[40]Doc. No. 28.

[41]Doc. No. 33.

[42]*Id.*

[43]*Id.*

[44]*Id.*

[45]*Id.*

[46]*Id.*

7

contend that none of the officers listened to them, and they remained in cuffs.[47] Plaintiffs maintain that when Plaintiffs were leaving, one of the officers yelled out, "Power 92 Jams" and started laughing.[48] Sergeant Willis asserts that once he found out who Plaintiffs were, Plaintiffs were released.[49]

Plaintiffs' Complaint alleges that they were subjected to an unreasonable seizure in violation of their Fourth Amendment rights.[50] Plaintiffs also allege that Defendants lack of reasonable suspicion in stopping and seizing them violated Rule 3.1 of the Arkansas Rules of Criminal Procedure.[51] Plaintiffs assert that they were denied their liberty, through the unreasonable seizure, without the due process of law, in violation of their Fifth Amendment rights.[52] Plaintiffs also contend that the alleged unlawful seizure violated their Fourteenth Amendment rights, as well as 42 U.S.C. § 1983.

Defendants asked the Court to grant summary judgment on Plaintiffs' claims; Plaintiffs, of course, assert that summary judgment is improper.

### III. DISCUSSION

#### A. Defendants' Involvement

Plaintiffs' deposition testimony[53] shows that the officers who initially detained Plaintiffs got out of a SWAT van and were wearing SWAT Team gear. None of the Defendants were on

---

[47]Doc. No. 33.

[48]*Id.*

[49]Doc. No. 28.

[50]Doc. No. 1.

[51]*Id.*

[52]*Id.*

[53]Doc. No. 28, Exhibits H, I.

8

the LRPD SWAT Team. Plaintiffs' Complaint alleges that all Defendants forcibly removed them from their vehicle,[54] but Plaintiffs' response to Defendant's Statement of Uncontested Material Facts alleges that Defendants Nannen and Shuetzle participated in Plaintiffs' seizure because they were part of the NLRPD Narcotics Unit. Plaintiffs do not offer any evidence that Defendants Nannen and Shuetzle personally participated in Plaintiffs' detention.

Plaintiffs' belief that Sergeant Willis was involved in Plaintiffs' initial detention appears to be based on the fact that Sergeant Willis was the front line supervisor who directed the execution of the search warrant and directed the personnel on site.[55] Plaintiffs allege that as soon as LRPD SWAT Team members secured the business, the operation was turned over to the NLRPD to search the premises and detain suspects, and that the NLRPD and LRPD had an interagency agreement that allowed the police departments to conduct joint operations.[56] Plaintiffs continue that Sergeant Willis remembered seeing the Power 92 vehicle, spoke with Plaintiffs while they were being detained by the NLRPD, and that, once Sergeant Willis received Plaintiffs' names, he ran the names through the NCIC to check if they had outstanding warrants.[57]

Plaintiffs have alleged, but have provided no evidence, that any of the Defendants personally participated in the initial stop and seizure of Plaintiffs. Plaintiffs did not set forth specific facts showing any of the Defendant's personal involvement. Plaintiffs allegations are

---

[54]Doc. No. 1.

[55]Doc. No. 33.

[56]*Id.*

[57]*Id.*

9

insufficient to create a genuine issue of material fact on whether Defendants unlawfully seized Plaintiffs.

    **B.    Duty to Intervene**

Plaintiffs' Response to Defendants' Motion for Summary Judgment seeks to establish liability not by arguing that Defendants personally and individually seized Plaintiffs, but by asserting Defendants violated a duty to intervene.[58] Plaintiffs contend that "[t]he NLRPD Narcotics Division, which was led by [Sergeant] Tim Willis, had a duty to ensure that innocent citizens were not caught up in the execution of this search warrant."[59]

"A state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official."[60] "'[O]ne who is given the badge of authority of a police officer may not ignore the duty imposed by his office' by failing to act to prevent the use of excessive force."[61] Officers cannot ignore the duty to stop other officers who, in their presence, summarily punish a person.[62]

The Eighth Circuit Court of Appeals has decided numerous cases involving an officer's duty to intervene. Generally, the duty to intervene arises when an officer is seen using obvious,

---

[58]Doc. No. 37. Plaintiffs' Pretrial Disclosure Sheet also identifies as a contested issue of fact whether Defendants could have intervened, and identifies as a contested issue of law whether the conduct of the LRPD SWAT Team can be attributed to the actions of the NLRPD Narcotics Unit. The Pretrial Disclosure Sheet does not identify as a contested issue of fact whether Defendants initially stopped and seized Plaintiffs. Doc. No. 39.

[59]Doc. No. 37.

[60]*Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).

[61]*Nance v. Sammis*, 586 F.3d 604, 611-12 (8th Cir. 2009) (internal citations omitted).

[62]See *Krout*, 583 F.3d 557, 565 (8th Cir. 2009).

violent physical force.[63] The Eighth Circuit Court has alluded to the duty to intervene in at least one case involving an alleged unreasonable seizure of a person, but, even in that case the plaintiff was apparently hospitalized for physical and emotional harm.[64] At least one appellate court has found that there is no duty to intervene unless violent force is observed.[65]

To be successful in a duty to intervene claim, a plaintiff must prove two elements: "the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration . . . ."[66]

---

[63] See, e.g., *Krout v. Goemmer*, 583 F.3d 557 (8th Cir. 2009) (Officers who witnessed and stood by while other officers kneed, punched, and fell with knees upon a non-resisting suspect, who was lying on the ground, violated the duty to intervene.); *Nance v. Sammis*, 586 F.3d 604 (8th Cir. 2009) (officer did not violate duty to intervene or Fourth Amendment rights in connection with 30-minute long handcuffing of a suspect, but Eighth Circuit Court of Appeals affirmed district court's denial of qualified immunity in connection with fatal shooting of another suspect that was part of the same incident); *Cohrs v. Norris*, No. 99-1571, 2000 U.S. App. Lexis 7601 (8th Cir. Apr. 24, 2000) (question of material fact existed whether unarmed prison guard violated duty to intervene when he did not call for help to break up 20-25 minute fight between inmates); *Prosser v. Ross*, 70 F.3d 1005 (8th Cir. 1995) (prison guard did not violate duty to intervene in connection with attack on inmate because armed inmate could have placed guard's safety in jeopardy and because inmates outnumbered guards); *Buckner v. Hollins*, 983 F.2d 119 (8th Cir. 1993) (officer violated duty to intervene where he allowed another officer into an inmates cell, after the other officer and inmate had words the day before, and walked away while other officer allegedly kicked and hit the inmate); *Williams v. Mueller*, 13 F.3d 1214 (1994) (correctional officer possibly violated duty to intervene in altercation between inmates); *Arnold v. Jones*, 891 F.2d 1370 (8th Cir. 1989) (no duty for unarmed officers to intervene in violent fight between inmates); *Webb v. Hiykel*, 713 F.2d 405 (8th Cir. 1983) (possible violation of duty to intervene where officers beat inmate); *Putnam v. Gerloff*, 639 F.2d 415 (8th Cir. 1981) (establishing that a subordinate could have a duty to intervene in connection with a superior's actions); *Jennings v. Davis*, 476 F.2d 1971 (8th Cir. 1973) (where plaintiff received physical and emotional injuries requiring hospitalization, officers who were at the station during the alleged unreasonable search and seizure may have had a duty to intervene, but plaintiff did not set forth specific facts showing a genuine issue for trial and summary judgment was granted).

[64] *Jennings v. Davis*, 476 F.2d 1971 (8th Cir. 1973).

[65] The Ninth Circuit has indicated that there is no duty to intervene when no violent force is involved. *Crim v. King*, 65 Fed. Appx. 591 (9th Cir. 2003).

[66] *Krout*, 583 F.3d at 565.

Even if the seizure of Plaintiffs violated their constitutional rights, Defendants did not breach a duty to intervene. The first element of a duty to intervene claim is that an officer is aware of the abuse. Plaintiffs were already seized when Defendants arrived at the scene. So, Defendants could not have intervened in the initial seizure. While Defendants may have been aware that Plaintiffs were detained and in handcuffs, considering the specific facts of this case, there is nothing in the record that indicates that Defendants were aware that the cuffs were an abuse. In inherently dangerous situations -- like the execution of a narcotics search warrant -- the use of handcuffs on detainees can be reasonable.[67] The amount of abuse involved in a detainee being handcuffed contrasts with the Eighth Circuit cases where the force was obvious and violent. I am not aware of an Eighth Circuit case holding that there is a duty to intervene where the level of the abuse was no more than the equivalent of a plaintiff being unlawfully detained in handcuffs, or in which the length of the detention was challenged.

The second element of a duty to intervene claim is that the duration of the episode is sufficient to permit an inference of tacit collaboration. Plaintiffs were detained for 45 minutes. Of the Defendants, apparently only Defendant Willis was involved in any way in verifying Plaintiffs' identity. Once Defendant Willis became aware of Plaintiffs -- after the LRPD SWAT Team had entered the area -- he requested that officers determine Plaintiffs' identities. After Defendant Willis learned Plaintiffs' identities, they were apparently released.[68] Considering the facts of this case, I cannot say that 45 minutes is sufficient to permit an inference of tacit collaboration.

---

[67] *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005) (2-to-3 hour detention in handcuffs was reasonable).

[68] Doc. No. 28, Exhibits C, H, and I.

Even if a violation of Plaintiffs' rights occurred, Defendants are entitled to qualified immunity since they did not violated any clearly established right.

Because Defendants were not personally involved in Plaintiffs' seizure, and because Plaintiffs cannot succeed on a duty to intervene claim, summary judgment is granted in connection with all Plaintiffs' claims against these Defendants.

Because there is nothing in the record indicating that Defendant Tim Yates was ever served with Plaintiffs' Complaint, and more than 120 days have passed, separate Defendant Yates is dismissed for failure to prosecute.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Motion (Doc. No. 26) is GRANTED and this case is DISMISSED. All other pending motions are MOOT.

IT IS SO ORDERED this 4th day of March, 2010.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE